FRANCIS H. AND DELORES MCLAUGHLIN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McLaughlin v. Commissioner
Docket No. 23564-83.
United States Tax Court
T.C. Memo 1987-156; 1987 Tax Ct. Memo LEXIS 148; 53 T.C.M. (CCH) 426; T.C.M. (RIA) 87156; March 24, 1987. *148 Held: Cost of goods sold determined for each year in issue. David L. Segal, for the petitioners. Eugene J. Wien, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in income and additions to tax for the years and in the amounts as follows: Additions to Tax
Section [1]
Section
Section
Year
Tax
6651(a)(1)
6653(a)
6654
1977
$10,551
$2,638 $613
$61
1978
17,275
4,870
974
71
1979
23,853
5,963
1,328
114
Petitioners have conceded all of the disallowed deductions determined by respondent except for the item described on each of petitioners' tax returns for each of the years as "Cost of goods sold and/or operations (Schedule C-1, line 8)." [2] The amounts of the additions to tax will of course depend on our determination of the deficiencies. Some of *149 the facts have been stipulated and they are so found. At the time of the filing of the petition, petitioners resided in Cornwells Heights, Pennsylvania. Petitioners, who are husband and wife, filed joint individual income tax returns for each of the three calendar years involved. Each of the returns was filed on September 1, 1981. Mr. McLaughlin is an experienced carpenter with sufficient expertise to do minor plumbing and electrical work. From 1968 until approximately 1981 or 1982 he worked principally for J. Camerlengo Contractors, Inc. (Camerlengo) as a subcontractor, principally inspecting construction work finished by Camerlengo and correcting obvious deficiencies which would not be approved upon the normal owner's inspection. Mr. McLaughlin employed a team of workmen which included from time to time several of his sons. He fixed the hourly rates for each of his workmen and once a week submitted an invoice to Camerlengo. The invoice customarily identified each member of Mr. McLaughlin's team and contained the hours worked and hourly rates, the hours worked and hourly rate of Mr. McLaughlin himself, an increment of 10 percent of the total charges for members of the team *150 other than Mr. McLaughlin, and a sum for gasoline. [3] Mr. McLaughlin was paid weekly by check by Camerlengo. Generally the checks were cashed and members of Mr. McLaughlin's team were paid in cash for their services. There was no tax withholding either by Camerlengo or by Mr. McLaughlin and neither Forms 1099 or Forms W-2 were filed with respect to the payments to Mr. McLaughlin or his payments to the members of his team. [4]
Mr. McLaughlin's basic records were two loose-leaf notebooks in which he recorded the hours worked by each member of his team. Each week, the notebook used for the *151 previous week was turned over to Mrs. McLaughlin who prepared the invoices to be submitted to Camerlengo. From time to time, the invoices submitted to Camerlengo were checked at least for arithmetic and on one job, at a retarded children's home called Pleasant Manor, an employee of the home scrutinized the Camerlengo invoices and satisfied herself that the hours shown on the invoices were approximately correct. Mr. Camerlengo himself apparently has enough confidence in Mr. McLaughlin to accept without question the invoices. At least one of the members of the team failed to file income tax returns and the gross income reported by one of Mr. McLaughlin's sons for Federal income tax purposes does not correlate with amounts invoiced to Camerlengo for that member of the team. However, the amounts claimed on each of the tax returns as "Cost of goods sold" closely approximates the amounts invoiced to Camerlengo in each of the years involved. OPINION The issue in this case is entirely factual and depends upon the credibility of Mr. McLaughlin's testimony and the correctness of his invoices to Camerlengo. Mr. McLaughlin dealt at arm's length with Camerlengo and we are impressed not only *152 by Mr. McLaughlin's credibility as a witness but by the corroboration of his testimony by other unrelated individuals, some of whom were from time to time members of his team and one of whom was an employee of Camerlengo, actively involved in its work and aware of Mr. McLaughlin's activities as a subcontractor. The only rebuttal evidence offered by respondent is the fact that Mr. McLaughlin's oldest son apparently did not include on his tax returns for these 3 years as gross income the amounts shown on invoices to Camerlengo as having been paid to him. The reason for those discrepancies, if they in fact exist, do not in our judgment impeach in any fashion petitioners' evidence or the credibility of Mr. McLaughlin as a witness. There are, however, some discrepancies which require comment. The copies of the invoices for the year 1977 are in general so poor as to preclude our comparing the yearly total with the amount shown on Mr. McLaughlin's tax returns and disallowed by the statutory notice. For the year 1978, the amount shown on the income tax return is $39,067 whereas the aggregate of the invoices to Camerlengo which are included in this record is $38,038.75. [5] For 1979, the *153 amount shown on the tax return is $52,527 whereas the aggregate of the Camerlengo invoices included in this record is $54,847.24. Mr. McLaughlin has not claimed a larger amount for costs of goods sold for the year 1979 than is claimed on the tax return. Accordingly, for the year 1978 we will allow as petitioners' cost of goods sold the amount which petitioners have proven, the sum of $38,038.75. For the year 1979 we will allow the amount petitioners claimed on their tax return, the sum of $52,527 rather than the larger amount which petitioners have proven. For the year 1977, respondent has made no point that petitioners' proof showed a lower figure than that claimed in the tax return; we therefore allow to petitioners as cost of goods sold the amount claimed on their 1977 tax return. We are convinced that Mr. McLaughlin incurred additional expenses but due to concessions that issue is not before us. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. On Schedule C-1, line 5, the cost is described as "subcontractors."↩
3. A sampling of the copies of the invoices included in the record shows that materials were frequently required and consumed in Mr. McLaughlin's work but the costs of materials do not appear to have been included on the invoices. Whether the materials were simply billed directly to Camerlengo or the cost was absorbed by Mr. McLaughlin is unclear. ↩
4. It seems probable that Mr. McLaughlin was acting as an independent contractor. Some of the members of his team may have qualified as independent contractors but probably some were simply employees. However, that is not an issue in this case.↩
5. Petitioners provided us and respondent's counsel with summaries of the 1978 and 1979 invoices. While the summaries are not in evidence, neither party has questioned the totals shown thereon.↩